D2F ✓

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HERIBERTO EDDIE VELEZ,

                Petitioner,

                **MEMORANDUM & ORDER**

-against-

                07 CV 1845

UNITED STATES OF AMERICA,

                Respondent.
-----------------------------------------------------X
DEARIE, Chief Judge.

Petitioner, pro se, moves pursuant to 28 U.S.C. § 2255 to vacate his conviction. For the reasons set forth below and in the government's memorandum in opposition, the application is denied, and the petition is dismissed.

**Background**

Petitioner was charged and convicted, after a jury trial, of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1); conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846; possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1); and premeditated murder through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1). On July 29, 2005, this Court sentenced petitioner to three concurrent terms of life in prison. He appealed, principally challenging the sufficiency of the evidence on various counts. The Second Circuit affirmed the judgment of conviction and sentence on February 16, 2006. United States v. Velez, 170 Fed. Appx. 146, 148 (2006).

Petitioner's conviction arose from his activities as part of the "Arawac Tribe" of the New York Chapter of the Latin Kings, a gang operating in Sunset Park, Brooklyn, whose criminal activities included murder, robbery, assault, extortion and drug trafficking. In August of 1997,

petitioner and fellow Latin Kings member Rolando McKay began selling cocaine at the Latin Kings' drug spot at 42nd Street and 10th Avenue in Brooklyn. Shortly thereafter, rival Bloods gang members began competing for customers at the drug spot as part of a larger conflict between the two gangs. On the evening of October 14, 1997, at the drug spot, petitioner fired multiple gunshots at Bloods gang member Jose Rosado, one of which was fatal. Kenny Reyes, who knew both petitioner and Rosado, witnessed the shooting. Although petitioner told McKay that he did not mean to kill Rosado, he nevertheless bragged to other gang members, including Eduardo Velez, Henry Arias and Billy Joe Gerena, about the murder. Reyes, McKay, Eduardo Velez, Arias and Gerena were government witnesses at trial.

Petitioner now seeks collateral relief on five grounds. He contends that trial counsel prevented him from testifying and failed to conduct an adequate pre-trial investigation. He also complains of excessive pre-indictment delay in violation of his due process rights and faults appellate counsel for failing to raise the issue on appeal. Finally, he claims that sentencing counsel's failure to challenge his life term as cruel and unusual punishment constituted ineffective assistance.

## Discussion

To secure habeas relief on the basis of ineffective assistance of counsel, Strickland v. Washington, 466 U.S. 668 (1984), requires that petitioner show both (1) that counsel's performance "fell below an objective standard of reasonableness," id. at 688, and (2) that petitioner was prejudiced by the deficient performance, id. at 692. When reviewing counsel's performance, the Court must begin with the principle that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at

690. The Court must also "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance" and "eliminate the distorting effects of hindsight." Id. at 689. Moreover, to satisfy the prejudice prong, "it is not enough for the [petitioner] to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding." Id. at 693. He must instead demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner cannot satisfy either Strickland prong with respect to his claim that he was prevented by counsel from testifying. Trial counsel explained the right to testify to petitioner both before and during trial, and though counsel offered his professional opinion that petitioner should decline to take the stand, he emphasized that the right was petitioner's and that he would not override petitioner's decision. (Schwarz Aff., Sept. 10, 2007, ¶ 3.) Thus, counsel properly satisfied his obligation to "inform [petitioner] that the ultimate decision whether to take the stand belong[ed] to [him]." Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997). According to counsel, on the day the government rested its case-in-chief, petitioner indicated unequivocally that he did not want to testify. (Id. ¶ 4.) Counsel's detailed affidavit is credited in the face of petitioner's bald claims. United States v. Chang, 250 F.3d 79, 85-86 (2d Cir. 2001). With respect to the prejudice prong, petitioner provides no details of what his testimony would have been, or how it would have cast doubt on the government's case against him. Whatever explanation petitioner would have offered, there is no reasonable probability that his self-serving testimony would have altered the outcome of the proceeding. The evidence against petitioner included the testimony of an eyewitness to the shooting and the testimony of multiple cooperating witnesses about petitioner's

3

boastful admissions. In short, the evidence was overwhelming.

Petitioner also cannot satisfy either Strickland prong with respect to his claim that trial counsel failed to conduct an adequate pre-trial investigation. As counsel's affirmation reflects, an experienced private investigator was hired to interview all of the potentially exculpatory witnesses identified by petitioner and from the material turned over by the government. (Schwarz Aff., Sept. 10, 2007, ¶¶ 5-7.) Those individuals that petitioner claims should have been called were either unavailable or uncooperative, or were fully interviewed and evaluated before counsel rejected them as witnesses. (Id.) Petitioner provides no basis for concluding that the testimony of the witnesses he now vaguely identifies for the first time would have affected the outcome of the trial.

Petitioner's claims regarding excessive pre-indictment delay also fail. These claims were raised in his post-trial Rule 29 motion and have already been rejected by this Court. As detailed in the government's opposition, petitioner was not prejudiced by the passage of time with respect to Carol Sorrentino, Theresa Daniels or Zoraida Garcia, the three allegedly exculpatory witnesses that he contends he would have called but for the delay. Although Detective Sorrentino no longer had any recollection of the anonymous tip she received that Carlos Magnani arranged for a man named "Jesus" to kill Rosado, Magnani himself testified at trial and denied knowing any "Jesus." Daniels, who saw a group of men running from the scene of the shooting, only recognized McKay, whom she called "Moso," among them as someone she knew. She later identified others in the group from photographs, but she was never shown a photograph of petitioner. Garcia, who died in 1999, could only have offered multiple hearsay, claiming to have "heard" from an unnamed auxiliary police officer who had "heard" from an unknown source that

4

an individual named "Mosa" was responsible for the murder. Appellate counsel cannot be faulted for failing to raise these meritless claims.

Finally, sentencing counsel cannot be faulted for failing to raise the meritless claim that petitioner's life sentence constituted cruel and unusual punishment. As the Second Circuit has held: "The Eighth Amendment condemns only punishment that shocks the collective conscience of society. A sentence of life without parole for a drug dealer and killer . . . is not so disproportionate to the offense that it shocks the public's conscience." U.S. v. Gonzalez, 922 F.2d 1044, 1053 (2d Cir. 1991).

## Conclusion

Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 27, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge